**FARUQI & FARUQI, LLP**
David E. Bower SBN 119546
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: dbower@faruqilaw.com

*Attorneys for Plaintiff Tony Jackson*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY JACKSON, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VERENIUM CORPORATION, JAMES CAVANAUGH, JOHN DEE, PETER JOHNSON, FERNAND KAUFMANN, JAMES LEVINE, HOLGER LIEPMANN, JOSHUA RUCH, CHERYL WENZINGER, PASTINACA ACQUISITION INC., and BASF CORPORATION, <br><br> Defendants. | Case No. **'13 CV 2436 JAH WMC** <br><br> **CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND INDIVIUDAL CLAIMS FOR VIOLATION OF SECTIONS 14(d)4 and (e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff Tony Jackson ("Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## INTRODUCTION

1.      This is a shareholder class action brought by Plaintiff on behalf of holders of the common stock of Verenium Corporation ("Verenium" or the "Company") against the board of

- 1 -
COMPLAINT

directors of Verenium (the "Board" or "Individual Defendants"), and other persons and entities (collectively, the "Defendants"), to enjoin the acquisition of Verenium by BASF Corporation ("BASF") through its wholly-owned subsidiary Pastinaca Acquisition Inc. ("Merger Sub")("Proposed Transaction").

2.       On September 20, 2013, Verenium issued a press release announcing that they had entered into a definitive merger agreement ("Merger Agreement") for BASF to acquire Verenium, via a tender offer (the "Tender Offer"), in an all cash transaction worth approximately $62 million, including debt ($51 million excluding debt).   Under the terms of the Proposed Transaction, Verenium shareholders will receive $4.00 for each share of Verenium common stock that is tendered (the "Proposed Transaction").   Following the consummation of the Proposed Transaction, Verenium will become a wholly-owned subsidiary of BASF.

3.       Verenium is a California-based biotechnology company engaged in the development and commercialization of enzymes for industrial processes in North America, Europe, South America and Asia.   The Company uses microbial DNA to manufacture enzymes to supply businesses involved in animal health and nutrition, grain processing, and oilfield services.   It markets a number of commercial brands of enzyme products, either independently or with partners. Verenium focuses on developing specialty enzyme products to convert biomass into fuel, making industrial processing more efficient and developing feedstocks for animals and therapeutic proteins for humans.   The Company's key development partners include BASF, Cargill, Danisco, Dupont, Novus, Syngenta, Tate & Lyle, and WeissBiotech.

4.       The Board has breached their fiduciary duties by conducting a conflicted and flawed sales process designed to ensure the sale of the Company to BASF on terms that favor Defendants and certain Verenium insiders.   The Proposed Transaction is being driven entirely by the Board and Company management who collectively hold and control (as of September 19, 2013) 2.6% of

Verenium's outstanding stock.  Indeed, if the Proposed Transaction closes, the Board and Company management will receive millions of dollars in special payments -- not being made to ordinary shareholders – for currently unvested stock options, performance units and restricted shares.

5.      As described below, both the value to Verenium shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company.

6.      The Proposed Transaction is designed to preclude other potential bidders to emerge with superior offers while also precluding shareholders from voicing opposition.  Defendants are working quickly to close the deal; absent judicial intervention, the initial closing of the Tender Offer is expected to consummate in less than four (4) weeks from now.  The Tender Offer and completion of the subsequent short-form merger of Verenium and Merger Sub will require approval of only 50.1% of the outstanding shares of Verenium under Section 251(h) of Delaware's General Corporation Law.

7.      As detailed herein, the Board failed to adequately discharge its fiduciary duties to the shareholders by, among other things,: (i) failing to ensure they will receive maximum value for their shares; (ii) failing to conduct an appropriate sales process; and (iii) agreeing to certain unreasonable deal protection devices in the Merger Agreement with BASF that dissuade or otherwise preclude the emergence of a superior offer.  Moreover, BASF aided and abetted the Board's breaches of fiduciary duty by, among other things, procuring unreasonable deal protections and convincing the Board to disregard the interests of Verenium's public shareholders.

8.      Further, on October 2, 2013, the Company filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  The Recommendation Statement fails to provide the Company's shareholders with material information and provides them with materially

misleading information thereby rendering the shareholders unable to make an informed decision regarding whether to tender their shares in support of the Proposed Transaction.

9.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith and due care as well as violations of the Exchange Act.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331.   This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at approximately $62 million (including debt), the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Verenium is incorporated in California and is therefore a resident of this District.

## PARTIES

13.     Plaintiff currently holds shares of common stock of Verenium and has held such shares since prior to the wrongs complained of herein.

14.     Defendant Verenium incorporated in December 21, 1992, is an industrial biotechnology company.  The Company develops and commercializes enzymes for use in a range of industrial processes.  It manufactures and markets its enzyme products in the fields of animal health and nutrition, grain processing, oilfield services and other industrial processes, such as pulp and paper and textiles.  As of December 31, 2012, it marketed commercial enzyme products, either independently or in collaboration with its partners. In addition, it has developed a pipeline of enzyme product candidates.  Its products are organized into four product lines: animal health and nutrition, grain processing, oilfield services and other industrial processes.

15.     Defendant James Cavanaugh ("Cavanaugh") has been a director of Verenium since 1992 and Verenium's Chairman since 1998.

16.     Defendant John Dee ("Dee") has been a director of Verenium since May 2008.

17.     Defendant Peter Johnson ("Johnson") has been a director of Verenium since 1999.

18.     Defendant Fernand Kaufmann ("Kaufmann") has been a director of Verenium since 2004.

19.     Defendant James Levine ("Levine") is the President, Chief Executive Officer, and a member of the Board of the Company and has been since April 2011.

20.     Defendant Holger Liepmann ("Liepmann") has been a director of Verenium since March 2013.

21.     Defendant Joshua Ruch ("Ruch") has been a director of Verenium since 2007.

22.     Defendant Cheryl Wenzinger ("Wenzinger") has been a director of Verenium since 2004.

23.     Defendant Merger Sub is a wholly-owned subsidiary of BASF, and is a Delaware corporation duly organized for the purposes of facilitating the Proposed Transaction.

24.     Defendant BASF is incorporated under the laws of the State of Delaware and is the world's largest chemical company, ahead of Dow and DuPont. It has more than manufacturing facilities and does business worldwide through six business segments: plastics (polymers and polyurethanes), performance products (including dispersions and pigments, adhesives and sealants, personal care and pharma additives, paper chemicals, and lubricant additives), chemicals (plasticizers and solvents), oil and gas exploration and production (through subsidiary Wintershall AG), functional solutions (catalysts, coatings, and construction chemicals), and agricultural products (fungicides, herbicides, insecticides).

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES UNDER STATE LAW

25.     By reason of the Individual Defendants' positions with the Company as directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of Verenium (the "Class") and owe Plaintiff and the other members of the Class the duties of good faith, fair dealing, loyalty and full and complete disclosure.

26.     By virtue of their positions as directors of Verenium, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Verenium to engage in the practices complained of herein.

27.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with due care.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

- 6 -
COMPLAINT

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Verenium, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.     The Individual Defendants are also obliged to honor their duty of candor to Verenium's shareholders by, *inter alia*, providing all material information to the shareholders regarding a situation in which they are asked to vote or tender their shares in favor of a proposed merger.  This duty of candor ensures that the Company's shareholders have all information that will enable them to make informed, rational and intelligent decisions as to whether to relinquish their ownership in Verenium for the consideration offered.

30.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public shareholders of Verenium, including their duties of loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including

personal financial benefits, not shared equally by Plaintiff or the public shareholders of Verenium common stock.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the Class.  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

32.    This action is properly maintainable as a class action.

33.    The Class is so numerous that joinder of all members is impracticable.  As of September 19, 2013, Verenium had approximately 12,788,544 shares of common stock issued and outstanding.  Members of the Class are scattered throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

34.    Questions of law and fact exist that are common to the Class, including, among others:

(a)    whether the Individual Defendants have breached their fiduciary duties of good faith, loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)    whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)    whether the Individual Defendants have breached their fiduciary duty of candor to Plaintiff and the other members of the Class in connection with the Proposed Transaction by failing to disclose to shareholders all material information upon which they are able to make an informed decision about whether to tender their shares;

- 8 -

(d)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(e)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(f)     whether Bed Bath & Beyond and Verenium are aiding and abetting the wrongful acts of the Individual Defendants.

35.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

36.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

37.     Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

**SUBSTANTIVE ALLEGATIONS**

**A.     Background**

38.     Verenium is a California-based biotechnology company engaged in the development and commercialization of enzymes for industrial processes in North America, Europe, South America and Asia.   The Company uses microbial DNA to manufacture enzymes to supply businesses involved in animal health and nutrition, grain processing, and oilfield services. Verenium markets a number of commercial brands of enzyme products, either independently or with partners.  The Company focuses on developing specialty enzyme products to convert biomass into fuel, making industrial processing more efficient and developing feedstocks for animals and therapeutic proteins for humans.  The Company's key development partners include BASF, Cargill, Danisco, Dupont, Novus, Syngenta, Tate & Lyle, and WeissBiotech.

39.     Recently, Verenium's financial performance has been impressive.  In the Company's press release filed with the United States Securities and Exchange Commission ("SEC") on August 7, 2013, the Company reported $9.6 million in product and contract manufacturing gross profit growth for the six months ending June 30, 2013, up 4.34% from the $9.2 million the Company reported in 2012.  The Company also reported increased gross margins of 37% up from the 35% the Company reported for the same period in 2012.  In announcing these results, Defendant Levine, Verenium's President and CEO commented, "In 2013, we've gained substantial traction with prospective customers for our grain processing products and expanded our presence in our core markets with the introduction of three new products[.] . . . Looking forward we are excited to launch our new phytase enzyme product, CIBENZA®PHYTAVERSE™, with our partner Novus later this year."

40.     Despite these promising future prospects, the Company's shareholders face the prospect of being excluded from this upside potential due to the intervening tender-offer proposal

made by BASF.  Rather than allowing the public shareholders to reap the benefits of the exciting opportunities on Verenium's horizon, the Individual Defendants have acted for their own benefit and the benefit of BASF, and to the detriment of Verenium's public shareholders by entering into the Proposed Transaction.

**B.**    **The Proposed Transaction**

41.    On September 20, 2013 Verenium issued a press release announcing that they had entered into the Merger Agreement.

42.    Specifically, the press release stated, in relevant part, that:

SAN DIEGO, Sept. 20, 2013 /PRNewswire/ -- Verenium Corporation (Nasdaq: VRNM), a leading industrial biotechnology company focused on the development and commercialization of high-performance enzymes, today announced it has entered into a definitive merger agreement with BASF Corporation, a leading chemicals company, under which BASF will commence a cash tender offer for all of the outstanding shares of Verenium's common stock. This agreement has been unanimously approved by both Verenium's and BASF's Boards of Directors.

Under the terms of the merger agreement, holders of outstanding shares of Verenium's common stock will receive $4.00 per share, representing a 56% premium to the volume weighted average closing price of Verenium's common stock in the six months prior to announcement of the transaction. Each of the directors and officers of Verenium has entered into tender and support agreements pursuant to which they have agreed to tender all of their shares.

The acquisition is an all-cash tender offer for all outstanding shares of Verenium common stock to be followed by a back-end merger. The tender offer is subject to standard closing conditions, including the acquisition of a majority of the shares outstanding including shares underlying options and warrants for which notices of exercise are received prior to the expiration of the tender offer for which shares have not yet been issued. The tender offer is expected to close in the fourth quarter of 2013.

BASF is the world's leading chemical company and its portfolio ranges from chemicals, plastics, performance products and crop protection products to oil and gas. BASF had sales of €72.1 billion in 2012 and more than 110,000 employees as of the end of 2012. BASF shares are traded on the stock exchanges in Frankfurt (BAS), London (BFA) and Zurich (AN).

UBS Investment Bank served as financial advisor and Cooley LLP served as legal advisor to Verenium.

43.    The consideration offered to Verenium's public stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of Verenium's common shares are materially in excess of the consideration being offered in the Proposed Transaction given the Company's prospects for future growth and earnings.   The Board has breached their fiduciary duties to Verenium stockholders by failing to take steps to obtain the best price possible under the circumstances before entering into this transaction pursuant to which BASF is underpaying for Verenium shares, thus unlawfully harming Verenium stockholders.

44.    The Proposed Transaction is the product of a hopelessly conflicted process that is designed to ensure the sale of Verenium to BASF on terms preferential to BASF and other Verenium insiders and to subvert the interests of Plaintiff and the other public stockholders of the Company.   In pursuing the unlawful plan to facilitate the acquisition of Verenium by BASF for grossly inadequate consideration, through a flawed process, each of the Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

45.    From the Proposed Transaction, Verenium's directors will receive millions of dollars in special payments – not being made to ordinary stockholders – for currently unvested stock options and restricted shares, all of which shall, upon the Proposed Transaction's closing, become fully vested and exercisable.   Thus the Board is conflicted and serving its own financial interests rather than those of Verenium's public stockholders.

C.    **The Unreasonable Deal Protection Devices**

46.    On September 23, 2013, the Company filed a Form 8-K with the SEC that disclosed the terms of its Merger Agreement.   To the detriment of Verenium's stockholders, as part of the Merger Agreement, the Individual Defendants agreed to certain deal protection devices that operate

conjunctively to lock-up the Proposed Transaction and ensure that no competing offers will emerge for the Company.

47.    First, the Merger Agreement contains a strict "no-solicitation" provision prohibiting the Company or the Individual Defendants from taking any affirmative action to comply with their fiduciary duties to obtain the best price possible under the circumstances.  Pointedly, the Merger Agreement at section 5.2(a) requires that the Company and the Individual Defendants shall not, "directly or indirectly (i) solicit, initiate, or knowingly facilitate or encourage (including by way of furnishing information) any inquiries or proposals that constitute, or could reasonably be expected to lead to, any Takeover Proposal . . . ."

48.    Similarly, section 5.2(b) of the Merger Agreement provides an "information rights" provision pursuant to which the Company must promptly notify BASF within twenty-four (24) hours should it receive an unsolicited competing Takeover Proposal.  The Company must notify BASF of the bidder's identity and the terms of the bidder's offer. Thereafter, if the Board determines that the competing acquisition proposal constitutes a "Superior Proposal," section 7.1(d) requires the Board to grant BASF three (3) business days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

49.    The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Company must give BASF an opportunity to match the competing takeover proposal.  Consequently, this provision prevents the Individual Defendants from exercising their fiduciary duties and precludes an opportunity for a potential purchaser to emerge.

50.     Additionally, the Merger Agreement provides that Verenium must pay to BASF a termination fee of $2.1 million in the event the Company decides to pursue any competing offer. This unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would essentially pay a naked premium for the right to provide the stockholders with a superior offer.

51.     Ultimately, these deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a "Superior Proposal" are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**D.      The Materially Incomplete Recommendation Statement**

52.     On October 2, 2013, the Company filed the Recommendation Statement with the SEC in connection with the Proposed Transaction.  Compounding the defective sales process utilized by the Individual Defendants, the Recommendation Statement fails to provide the Company's stockholders with material information thereby precluding the stockholders from making a fully informed decision regarding the tender of their shares.

53.     Specifically, as set forth in more detail below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things, the sales process leading up to the announcement of the Proposed Transaction and the data and inputs relied upon and observed by the Company's financial advisor UBS Securities LLC ("UBS").  Disclosure of this information is critical to a reasonable shareholder's determination on whether to tender their shares. This information is necessary for stockholders to evaluate and properly assess the credibility of the various analyses preferred by UBS and relied upon by the Board in recommending the Proposed

- 14 -
COMPLAINT

Transaction to Verenium stockholders.  In particular, in describing the analyses performed by UBS, the Recommendation Statement fails to disclose the following:

   a. In the *Discounted Cash Flow Analysis*, the Company should disclose (i) the rationale for selecting discount rates ranges of 22% to 28%; (ii) the rationale for applying a perpetual growth rate ranging from 3% to 5% to the unlevered free cash flow of the Company during the terminal period of the projections; (iii) the Company's weighted average cost of capital ("WACC") and the key inputs used to calculate the Company's WACC; and (iv) the present value of Verenium's net operating loss carry-forwards ("NOLs");

   b. In the *Selected Public Companies Analysis*, (i) the reasons for selecting the companies used in the analysis; and (ii) the negative multiples under the "Enterprise Value as a Multiple of EBITDA" analysis; and

   c. In the *Selected Transaction Analysis*, the rationale for limiting the analysis to just 12 transactions.

  54. Moreover, the Recommendation Statement does not disclose why Verenium management waited until September 2013 to "update" Company financial projections to include a "risk assessment of [Verenium's] ability to achieve the projected revenue for each product line . . . ."  This "update" had the effect of greatly reducing Verenium's free cash flows as well as the *Discounted Cash Flow Analysis*.

  55. Also, the *Background of Offer and Merger* section of the Recommendation Statement contains the following material omissions:

   (a) Whether any potential bidders or acquirers for Verenium refused to enter into a non-disclosure agreement and/or refused to enter into further negotiations with the Company because of the existence of the one-year standstill provisions;

(b)    A description of the "potential financing alternatives" that the Company explored in the first quarter of 2011 through the remainder of 2011 in an attempt to repurchase all the outstanding 2007 Notes;

(c)    The reasons as to why the "counter-party" to the term sheet communicated to Verenium that it was no longer willing to proceed with the secured loan in December 2011;

(d)    Whether Verenium interviewed and/or considered financial advisors other than UBS in connection with the Proposed Transaction;

(e)    How the Board arrived at the opinion that BASF's $3.75 per share valuation of Verenium "was not compelling" and that a "higher valuation would be required for further consideration of such a transaction."

(f)    The "certain assumptions" on which BASF's April 1st indication of interest was based;

(g)    Why the Board waited until May 3, 2013 to execute a written engagement letter with UBS;

(h)    The criteria used to select the "eight strategic parties" that were contacted by UBS;

(i)    Why five of the eight strategic parties that UBS contacted ultimately decided not to pursue a transaction with Verenium;

(j)    Whether the Board conducted a conflict check on UBS before they were formally engaged on May 3, 2013;

(k)    The identities of Companies A, B and C;

(l)    Whether Levine discussed potential future employment with BASF any time before the announcement of the Proposed Transaction;

COMPLAINT

(m)     Whether any members of Verenium's Board or senior management have secured future employment with BASF;

(n)     Whether the Board, at any time prior to entering into the Proposed Transaction, considered any other strategic alternatives;

56.     The information requested above collectively amounts to the key inputs necessary for one to be able to evaluate and understand the sales process and analysis rendered in connection with the Proposed Transaction.   Therefore, the aforementioned omitted information is highly relevant and material to Verenium stockholders.

57.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

### On Behalf of Plaintiff Claim for Violations of Section 14(d)(4) and 14(e) of the Exchange Against Verenium and the Individual Defendants

58.     Plaintiff brings this cause of action on behalf of himself as an individual.

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     Verenium and the Individual Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

61.     Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations

define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

62. The Recommendation Statement violates Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Verenium and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## SECOND CAUSE OF ACTION

### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64. Plaintiff brings this cause of action on behalf of himself as an individual.

65. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Verenium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Verenium, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

67. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading

- 18 -
COMPLAINT

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

69.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### THIRD CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

72.     Plaintiff brings this cause of action on behalf of himself and all other similarly situated shareholders in Verenium.

73.     Plaintiff incorporates each allegation set forth above as if fully set forth herein.

74.     The Individual Defendants have violated fiduciary duties of care, loyalty, disclosure and good faith owed to public shareholders of Verenium.

75.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Verenium.

76.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, disclosure and independence owed to the shareholders of Verenium because, among other reasons, they failed to take steps to maximize the value of Verenium to its public shareholders.

77.     The Individual Defendants dominate and control the business and corporate affairs of Verenium, and are in possession of private corporate information concerning Verenium's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Verenium which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

78.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

79.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Verenium's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

80.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

81.     Plaintiff and the members of the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

### FOURTH CAUSE OF ACTION

**On Behalf of Plaintiff and the Class**
**Against BASF and Merger Sub for Aiding and Abetting the**
**Individual Defendants' Breach of Fiduciary Duty**

82.     Plaintiff brings this cause of action on behalf of himself and all other similarly situated shareholders in Verenium.

83.     Plaintiff incorporates each allegation set forth above as if fully set forth herein.

84.     BASF and Merger Sub have acted and are acting with knowledge of the fact that the Individual Defendants are in breach of their fiduciary duties to Verenium's public shareholders, and have participated in such breaches of fiduciary duties.

85.     BASF and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.   In so doing, BASF and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

86.     Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against Defendants as follows:

A.   Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representatives;

B.   Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain transaction providing the best possible terms for shareholders and discloses all material information required under State and Federal law;

C.   Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

Dated: October 9, 2013

FARUQI & FARUQI, LLP

DAVID E. BOWER
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: dbower@faruqilaw.co

OF COUNSEL:
FARUQI & FARUQI, LLP
Juan E. Monteverde
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
*Counsel for Plaintiff*

- 22 -
COMPLAINT